**Affirmed and Memorandum Opinion filed October 21, 2014.**



In The

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-13-00664-CR

**JOSHUA GEORGE NOWLAND, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court
Jefferson County, Texas
Trial Court Cause No. 12-14189**

## M E M O R A N D U M    O P I N I O N

A jury convicted appellant Joshua George Nowland of aggravated robbery[1] and assessed his punishment at 28 years' confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine of $10,000. Appellant challenges his conviction in four issues, arguing that: (1) the trial court improperly defined "robbery" in the abstract paragraphs of the jury charge; (2)

---

[1] *See* Tex. Penal Code Ann. §§ 29.02(a)(1), 29.03(a)(2) (West 2011).

crime scene photographs admitted before the jury were not properly authenticated; (3) the trial court erred in failing to instruct the jury to disregard allegedly improper jury argument of the State; and (4) the trial court erred in denying a mistrial after allegedly improper jury argument by the State. We affirm.[2]

## I.  FACTS AND PROCEDURAL BACKGROUND

On May 9, 2012, appellant visited Randy Flatau's jewelry store in Jefferson County, Texas, under the pretense of purchasing merchandise. While Flatau and appellant were discussing the merchandise, appellant pointed a handgun at Flatau and told him that he planned to rob the jewelry store. Appellant led Flatau's wife and a customer to the back of the jewelry store and made them lie face down in the office. Flatau informed appellant that a shoulder injury prevented him from lying down. Appellant initially permitted Flatau to remain on one knee unrestrained while appellant filled a satchel with merchandise from the store safe. At some point during the robbery, appellant decided to restrain Flatau. While attempting to restrain Flatau, appellant shot Flatau in the leg. After shooting Flatau, appellant continued filling the satchel with the contents of the store safe.

After obtaining the merchandise from the safe, appellant proceeded towards the store exit. By that time, Flatau had retrieved a revolver that was hidden under a display counter. Flatau ordered appellant to stop. Appellant pointed his gun at Flatau. Flatau opened fire, emptying the revolver. Flatau then activated the store's silent alarm system, went to his office, acquired a second gun, and opened fire again. Flatau shot appellant multiple times, disabling him. Flatau then held appellant at gunpoint until the police arrived.

---

[2] This case was transferred to our court from the Beaumont Court of Appeals; therefore, we must decide the case in accordance with its precedent if our decision would otherwise be inconsistent with its precedent. *See* Tex. R. App. P. 41.3.

2

A Jefferson County grand jury indicted appellant for aggravated robbery by causing bodily injury. Appellant pleaded not guilty and was convicted in a jury trial. Appellant timely appealed.

## II. DISCUSSION

### A. Appellant's rights were not egregiously harmed by the inclusion of an erroneous definition of "robbery" in the abstract paragraphs of the jury instruction.

In his first issue, appellant contends the trial court erred by submitting a jury charge that defined the charged offense as aggravated robbery by threat when appellant was actually indicted for aggravated robbery by causing bodily injury. The State concedes that the trial court erred but argues that the error did not result in egregious harm to appellant.

Because the State conceded that the trial court erred, we need only analyze the error for harm. *See* Tex. R. App. P. 47.1. Appellant did not object to the jury charge at trial; therefore, we can reverse only if the error resulted in egregious harm. *Hollander v. State*, 414 S.W.3d 746, 749 (Tex. Crim. App. 2013). Errors that result in egregious harm are those that affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). When determining whether the record establishes that appellant suffered egregious harm, we consider: (1) the complete jury charge; (2) arguments of counsel; (3) the entirety of the evidence, including the contested issues and weight of the probative evidence; and (4) any other relevant factors revealed by the record as a whole. *Hollander*, 414 S.W.3d at 749–50.

#### 1. *Jury Charge*

We begin by examining the jury charge as a whole. *Vasquez v. State*, 389 S.W.3d 361, 371 (Tex. Crim. App. 2012). A jury charge is comprised of an

3

application paragraph and abstract paragraphs. The application paragraph is what authorizes the jury to convict a defendant but is not necessarily determinative of what legally authorizes a conviction. *Yzaguirre v. State*, 394 S.W.3d 526, 530 (Tex. Crim. App. 2013). We look to the wording in the application paragraph to determine whether the jury was correctly instructed in accordance with the indictment and also to determine what the jury likely relied upon in arriving at its verdict, which can help resolve a harm analysis. *Id.*

The abstract paragraphs serve merely as a glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge. *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012). "Where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). "Generally, a reversible error occurs in the giving of an abstract instruction only when it is an incorrect or misleading statement of law *that the jury must understand* in order to implement the commands of the application paragraph." *Crenshaw*, 378 S.W.3d at 466 (emphasis added).

The application paragraph of the jury charge stated:

Now, if you believe from the evidence beyond a reasonable doubt that in Jefferson County, Texas, that on or about the 9th day of May, Two Thousand and Twelve, and anterior to the presentment of the indictment, in the County of Jefferson and State of Texas, the defendant JOSHUA GEORGE NOWLAND, did then and there while in the course of committing theft of property owned by RANDY FLATAU, hereafter styled the Complainant, and with intent to obtain and maintain control of said property, *intentionally or knowingly or recklessly cause bodily injury* to the Complainant, by SHOOTING COMPLAINANT, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a FIREARM, then you shall find the defendant GUILTY of AGGRAVATED ROBBERY, as alleged in the indictment.

4

(Emphasis added). The abstract paragraphs of the jury charge defined "robbery" and "aggravated robbery" as follows:

> **ROBBERY**: A person commits the offense of Robbery, if, in the course of committing theft, and with the intent to obtain or maintain control of property, he *intentionally or knowingly or recklessly threatens or places another in fear of imminent bodily injury or death.*
>
> **AGGRAVATED ROBBERY**: A person commits the offense of Aggravated Robbery if he commits Robbery and in addition he uses or exhibits a deadly weapon.

(Emphasis added).

We acknowledge that the abstract paragraphs defined robbery by threat, as opposed to the charged crime of robbery by bodily injury, and incorrectly included "recklessly" as one of the culpable mental state elements of robbery by threat.[3] However, the abstract paragraphs were not incorporated into the application paragraph. The application paragraph accurately tracked the language of the indictment,[4] which alleged the bodily-harm theory of robbery. The application paragraph restricted the jury's consideration only to those allegations contained in the indictment. *See Crenshaw*, 378 S.W.3d at 467; *cf. Cullum v. State*, 576 S.W.2d 87, 88 (Tex. Crim. App. [Panel Op.] 1979) (pre-*Almanza* case; finding

---

[3] *See* Tex. Penal Code Ann. § 29.02(a)(2) (robbery by threat can only be committed intentionally or knowingly).

[4] The indictment stated:

> JOSHUA GEORGE NOWLAND, hereafter styled the Defendant, on or about the 9TH day of MAY, TWO THOUSAND AND TWELVE, and anterior to the presentment of this indictment, in the County of Jefferson and State of Texas, did then and there while in the course of committing theft of property owned by RANDY FLATAU, hereafter styled the Complainant, and with intent to obtain and maintain control of said property, intentionally and knowingly and recklessly caused bodily injury to the Complainant, by SHOOTING COMPLAINANT, and the Defendant did then and there use and exhibit a deadly weapon, to-wit: a FIREARM, AGAINST THE PEACE AND DIGNITY OF THE STATE.

5

fundamental jury-charge error when application paragraph authorized conviction on robbery by causing bodily injury but indictment alleged robbery by threat).

The jury is presumed to have understood and followed the court's charge, absent evidence to the contrary. *Crenshaw*, 378 S.W.3d at 467. Other than the single flawed abstract paragraph which we already have addressed, we are aware of nothing in the record that would suggest the jury did not understand the application paragraph of the court's charge. Therefore, we presume the jury convicted appellant pursuant to the bodily-harm theory of robbery. Furthermore, the jury did not need to understand the erroneous definition of robbery provided by the trial court to implement the commands of the application paragraph because the application paragraph correctly stated the elements of robbery by causing bodily injury and conformed to the allegations in the indictment. *See id.* at 466.

### 2.    *Trial Evidence*

Next, we analyze the evidence adduced at trial. *Vasquez*, 389 S.W.3d at 371. The evidence in this case is generally not disputed. Specifically, the overwhelming evidence indicated that appellant entered the jewelry store; held Flatau, Flatau's wife, and a customer at gunpoint; and tried to depart with merchandise from the store safe. With regard to the bodily injury element of aggravated robbery, Flatau testified that appellant shot him in the leg with a handgun. Flatau also testified that the wound was painful and that he was taken to the hospital to receive medical treatment for the wound. The jury reasonably could have concluded from the evidence that appellant committed aggravated robbery by causing bodily injury.

### 3.    *Arguments of Counsel*

Finally, we analyze the arguments of counsel. *Id.* During closing arguments, appellant's counsel stressed that the jury would be looking at the application paragraph of the jury charge, describing it as the jury's "roadmap." He emphasized

that the jurors must analyze the application paragraph to determine whether the evidence supported each of the allegations in the charge. Appellant's counsel also recited part of the application paragraph during his closing argument. Although appellant's counsel did mention the definitions contained in the abstract portion of the charge, he did not recite any of the definitions or emphasize their importance. During her closing argument, the prosecutor stressed the bodily-injury aspect of the charged offense on multiple occasions. The prosecutor also reiterated that the application paragraph was the jury's roadmap. Our review of the record indicates that the arguments of both counsel focused on the application paragraph of the jury charge rather than the abstract paragraphs.

In sum, nothing in our review of the record suggests how the jury might have been confused by the application paragraph of the trial court's charge. *See id.* at 372. Nor does the record reveal evidence to rebut the presumption that the jury understood and followed the application paragraph of the trial court's charge. Likewise, we have found nothing in the record to suggest that the jury was confused or misled. *See id.* We therefore conclude that appellant's rights were not egregiously harmed by the inclusion of an erroneous definition of "robbery" in the abstract portion of the jury instruction. Accordingly, we overrule appellant's first issue.

**B.    The trial court erred in admitting Exhibits 9, 55, and 57, but the error was harmless.**

In his second issue, appellant argues that the trial court abused its discretion when it admitted Exhibits 1–58, which contained photographic evidence of the crime scene, because the evidence was not properly authenticated. We conclude that the trial court erred when it admitted Exhibits 9, 55, and 57, but the error was harmless.

7

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). An appellate court must uphold the trial court's evidentiary ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court abuses its discretion if it acts arbitrarily and unreasonably, such that it acted "without reference to any guiding rules and principles." *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). An appellate court will not reverse a trial court's evidentiary ruling if it falls within the zone of reasonable disagreement. *Tienda*, 358 S.W.3d at 638.

The predicate for introduction of a photograph requires proof of (1) its accuracy as a correct representation of the subject at a given time and (2) its material relevance to a dispute issue. *Huffman v. State*, 746 S.W.2d 212, 222 (Tex. Crim. App. 1988). To authenticate a photograph, a witness who observed the object or scene with his or her naked eye must testify that the photograph truly and accurately represents that object or scene. *Id.* The witness can authenticate a photograph even though the witness did not take the photograph or see it taken. *Id.*

Generally, Exhibits 1–58 are crime-scene photographs of the interior and exterior of the jewelry store shortly after the robbery occurred. Flatau testified that the images fairly and accurately reflected the condition of the store on the day the robbery occurred. Because Flatau owned the store, had worked there for twenty years, and was present during the commission of the robbery, he possessed the requisite knowledge to authenticate the crime-scene photographs. Therefore, with the exception of Exhibits 2, 9, 55, and 57, which we specifically address below, we conclude the trial court did not err when it admitted State's Exhibits 1–58.

8

We now consider appellant's specific challenges to Exhibits 2, 9, 55, and 57. The trial court did not err when it admitted Exhibit 2. Exhibit 2 depicted the side of Flatau's store, including a portion of the parking area. Despite initially testifying that he did not know what Exhibit 2 depicted, Flatau later confirmed that Exhibit 2 depicted the "left side to the front of the store." Given Flatau's intimate knowledge of the store and the surrounding area and the fact that he was present during the commission of the robbery, this testimony was sufficient to authenticate the Exhibit 2 photograph. The trial court did not err when it admitted Exhibit 2.

It was error to admit Exhibits 9, 55, and 57. The trial court erred when it admitted Exhibit 9. Exhibit 9 depicted an unsheathed Remington knife alongside a cone marked with the number "2." Flatau recalled seeing a sheathed knife during the robbery, but he never observed the unsheathed knife. As a result, Flatau could not have testified that Exhibit 9 accurately portrayed the unsheathed knife found at the crime scene. The trial court erred when it admitted Exhibit 9 into evidence.

The trial court erred when it admitted Exhibit 55. Exhibit 55 depicted an open Wells Fargo envelope containing two bundles of money. Flatau testified to seeing a "bank envelope" during the commission of the robbery. He also testified that appellant told him the envelope contained money. However, in response to the State's questioning about the actual contents of the envelope, Flatau only stated, "I can tell you what I was told." Flatau never saw the money inside the envelope. As a result, Flatau did not have the requisite knowledge of the envelope's contents to authenticate the Exhibit 55 photograph. The trial court erred when it admitted Exhibit 55 into evidence.

The trial court erred when it admitted Exhibit 57. Exhibit 57 depicted a sport utility vehicle parked in the parking area behind Flatau's store. Flatau testified that he never saw the sport utility vehicle. His knowledge of the vehicle stems solely

9

from statements made to him by his wife. As a result, Flatau did not possess the requisite knowledge of the sport utility vehicle to authenticate Exhibit 57. The trial court erred when it admitted Exhibit 57 into evidence.

Having determined that the trial court erred in admitting State's Exhibits 9, 55, and 57, we must decide whether the error was harmful. The erroneous admission of evidence is a non-constitutional error. *See Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). "[A]n appellate court must disregard a non-constitutional error that does not affect a criminal defendant's 'substantial rights.'" *Id.*; *see* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). A non-constitutional error is harmless if the improperly admitted evidence did not influence the jury or had but a slight effect on its deliberations. *Id.* We must examine the entire record and calculate, to the extent possible, the probable impact of the error upon the rest of the evidence. *Id.* The "entire record" includes testimony, physical evidence, the nature of the evidence supporting the verdict, the jury instructions, the State's theory, any defensive theories, closing arguments, voir dire, the character of the alleged error, how the character of the error might be considered in connection with other evidence in the case, and whether the State emphasized the error. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002). The presence of overwhelming evidence supporting the finding of guilt can also be a factor in the evaluation of harmless error. *Id.* at 358.

After examining the entire record, we conclude that the erroneous admission of State's Exhibits 9, 55, and 57 was harmless. First, although Flatau had never seen the knife unsheathed as portrayed in Exhibit 9, the actual knife depicted in Exhibit 9 was admitted into evidence as Exhibit 66. The erroneous admission of

Exhibit 9 had little impact on the rest of the evidence. Second, the State presented overwhelming evidence of appellant's guilt, most notably the consistent testimony of three eyewitnesses. Flatau, Flatau's wife, and a customer testified that appellant entered the store and held them at gunpoint. Flatau testified that appellant shot him. Flatau also testified that he saw appellant filling a satchel with merchandise from the store safe. The first officer on the scene observed Flatau holding appellant at gunpoint and noticed that Flatau had been shot. The police recovered a satchel from appellant that contained the stolen merchandise. Photographs of the satchel were admitted into evidence.

Even if Exhibits 9, 55, and 57 had been excluded, the jury could have concluded from the other evidence that appellant committed the charged offense. The erroneous admission of Exhibits 9, 55, and 57 had little to no impact on the rest of the evidence in the case. With the exception of Exhibits 9, 55, and 57, the trial court did not err in admitting Exhibits 1–58. The trial court committed harmless error when it admitted Exhibits 9, 55, and 57. Appellant's second issue is overruled.

## C. Appellant did not preserve his objection to the State's jury argument.

In his third and fourth issues, appellant argues that the trial erred when it refused to instruct the jury to disregard the State's allegedly improper jury argument and that the trial court abused its discretion when it denied his motion for mistrial. We do not reach the issue of whether the trial court erred because appellant failed to preserve the error.

"Because preservation of error is a systemic requirement on appeal, a court of appeals should review preservation of error regardless of whether the issue was raised by the parties." *Bekendam v. State*, — S.W.3d —, No. PD-0452-13, 2014 WL 4627275, at *4 (Tex. Crim. App. Sep. 17, 2014). Although the State did not

11

raise the issue in its brief, we must determine whether the jury-argument issue raised by appellant was preserved for review.

A defendant's failure to timely object to an alleged error waives the complaint on appeal. Tex. R. App. P. 33.1(a). "To complain about an improper jury argument, a defendant must object at trial and pursue his objection to an adverse ruling." *Temple v. State*, 342 S.W.3d 572, 603 (Tex. App.—Houston [14th Dist.] 2010) (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). A defendant "must object at the earliest opportunity to prevent waiver of an issue on appeal." *Espinosa v. State*, 194 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991)). Additionally, a defendant must object each time an improper argument is made to prevent waiver of the issue on appeal. *Temple*, 342 S.W.3d at 603; *George v. State*, 959 S.W.2d 378, 383 (Tex. App.—Beaumont 1998, pet. ref'd).

During the State's closing argument, the following exchange occurred:

**[STATE]:** I want y'all to keep this simple. Did Mr. Nowland enter Randy's Jewelry, attempt to take the property owned by Mr. Flatau, did he cause bodily injury, did he threaten bodily injury, and did he exhibit a deadly weapon. That's it. That's all you have to decide - -

**[APPELLANT'S COUNSEL]:** Your Honor, I object. The totality is the date, the place, not just those facts. That's a mischaracterization of the law, Your Honor.

**THE COURT:** Clear that up, please.

**[STATE]:** That's true.

**[APPELLANT'S COUNSEL]:** Your Honor, your ruling is?

**THE COURT:** Sustained.

**[APPELLANT'S COUNSEL]:** Ask the jury to be instructed to disregard that, Your Honor.

**THE COURT:** Denied.

**[APPELLANT'S COUNSEL]:** Thank you, Your Honor. Move for a mistrial.

**THE COURT:** Denied.

**[STATE]:** You also have to, you know, agree that we proved beyond a reasonable doubt that this happened in Jefferson County, Texas, on or about May 9th of 2012; okay?

The basis for appellant's objection was that the prosecutor did not inform the jury about the State's burden to prove the date and location elements of the charged offense beyond a reasonable doubt. The State made a virtually identical statement earlier in its argument that did not include the date or location elements of the charged offense. The prosecutor asserted:

> All you have to determine is did Mr. Joshua Nowland in the course of committing theft intentionally, knowingly or recklessly cause bodily injury to Randy Flatau and exhibit a deadly weapon; okay? That's it; okay?

Appellant did not object to this earlier statement by the prosecutor.

Because he did not object when the prosecutor first made the complained of argument to the jury, appellant has failed to preserve the issue of whether the prosecutor's statements amounted to improper jury argument. Accordingly, we overrule appellant's third and fourth issues.

### III.   CONCLUSION

Having overruled each of appellant's issues on appeal, we affirm the trial court's judgment.

/s/     Marc W. Brown
Justice

Panel consists of Chief Justice Frost and Justices Donovan and Brown.

Do Not Publish — TEX. R. APP. P. 47.2(b).

13